IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| UNITED STATES OF AMERICA, | ) | |
| --- | --- | --- |
| | ) | |
| | ) | No. 11 CR 148-1 |
| v. | ) | |
| | ) | |
| | ) | Judge Amy J. St. Eve |
| WILLIAM ALEXANDER | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Before the Court is Defendant William Alexander's Motion for Discovery on Racial Profiling. (R. 118, Mot.) The Court denies Alexander's motion to a large extent, but grants limited discovery, as explained below, of the Bureau of Alcohol, Tobacco, Firearms and Explosives' ("ATF") manual regarding the identification of targets in its stash-house robbery sting operations.[1]

### BACKGROUND

On March 22, 2011, the grand jury returned a four-count indictment charging Alexander and his two co-defendants with conspiring and attempting to knowingly and intentionally possess five kilograms or more of cocaine with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1), 846, and knowingly possessing a firearm in furtherance of a drug trafficking crime in violation of 21 U.S.C. § 846 and 18 U.S.C. § 924(c)(1)(A), (2). (R. 16, Indictment at 1-3.) Special agents with the ATF arrested Alexander and his co-defendants on February 23, 2011 as part of a stash-house robbery sting operation. The stash house at issue was not real, and the individuals with

---

[1] Defense counsel, who is counsel of record in *United States v. Brown,* already has some of the discovery Alexander seeks in this case, which the government filed in another case pending in the Northern District of Illinois. *See United States v. Brown,* No. 1:12-cr-00632, R. 154 at Ex. A-D.

whom Alexander and his co-defendants agreed to commit the robbery were undercover ATF agents.

In the present motion, Alexander seeks discovery regarding alleged racial profiling in the investigation and prosecution of the ATF's stash-house robbery sting operations. (Mot. at 9-12.) In support of his motion, Alexander provides the racial makeup of defendants from 17 stash-house robbery sting cases brought in the Northern District of Illinois since 2006. (*Id.* at 4-6.) Alexander claims that 42 of the 57 defendants in those cases are African American, 8 are Latino, and 7 are white. (*Id.* at 6.) Alexander further claims that in the 7 cases brought since 2011, 19 of the 26 defendants are African American, 7 are Latino, and none are white. (*Id.*) Alexander asserts that these statistics establish that the ATF field office in Chicago and the U.S. Attorney's Office for the Northern District of Illinois target minorities in conducting and prosecuting stash-house robbery stings, like the one that led to Alexander and his co-defendants' arrest. (*Id.* at 1.)

Alexander argues that the Court should authorize discovery related to his purported defenses of selective prosecution and selective enforcement under *United States v. Armstrong,* 517 U.S. 456, 116 S. Ct. 1480, 134 L. Ed. 2d 687 (1996), or Federal Rule of Criminal Procedure 16. (*Id.* at 7-8.) Specifically, Alexander requests discovery of the following seven categories of information or documents:

a) [A] list by case name, number, and the race of each defendant of all phony stash house ripoff cases brought by the U.S. Attorney's Office for the Northern District of Illinois in which ATF was the federal investigatory agency from 2006 to the present.

b) For each such case listed in response: a statement of prior criminal contact that the federal agency responsible for the investigation had with each defendant prior to initiating the phony stash house ripoff sting (if all such information for a particular case is contained in the criminal complaint, a reference to the complaint would be a sufficient response).

c) [T]he statutory or regulatory authority for ATF to be instigating and/or pursuing phony staff [sic] house ripoff cases involving illegal drugs instead of guns. Any any

2

    [sic] decision by any federal agency, the Justice Department or the White House to authorize ATF to pursue drug cases in the Northern District of Illinois.

    d) All national and Chicago Field Office ATF manuals [including The Home Invasion Operations Bulletin 1st edition and The ATF Manual Order], circulars, field notes, correspondence or other material which discus "stings," "reverse stings," "phony stash house ripoffs" or entrapment operations, including protocols and/or directions to agents and to confidential informants regarding how to conduct such operations, how to determine which persons to pursue as potential targets or ultimate defendants, how to ensure that the targets do not seek to quit or leave before an arrest can be made and how to ensure that agents are not targeting persons for such operations on the basis of their race, color, ancestry or national origin.

    e) All documents that contain information on how supervisors and managers of the Chicago area ATF were to ensure that its agents were not targeting persons on the basis of their race, color, ancestry or national origin for these phony stash house ripoffs and what actions the Chicago area ATF (i.e. operating in the Northern District of Illinois) supervisors and managers took to determine whether agents were not targeting persons for such operations on the basis of their race, color, ancestry or national origin.

    f) All documents which discuss "predication" for stash house stings. "Predication" is used here with the meaning it has in political corruption cases—that is establishing a good faith basis that a subject is already corrupt before the government tries to corrupt him.

    g) All documents containing instructions given during the time Patrick Fitzgerald or Gary Shapiro have been the U.S. Attorney for the Northern District of Illinois about the responsibilities of AUSA's [sic] to ensure that defendants in cases brought by the Office of the U.S. Attorney for the Northern District of Illinois have not been targeted due to their race, color, ancestry or national origin and specifically that those persons who are defendants in phony stash house cases in which ATF was the investigatory agency have not been targeted due to their race, color, ancestry or national origin and that such prosecutions have not been brought with any discriminatory intent on the basis of the defendant's race, color, ancestry, or national origin.

(*Id.* at 9-12.)

## LEGAL STANDARD

**I.** ***United States v. Armstrong***

    The Supreme Court considered the showing that a defendant must make to obtain discovery on a selective prosecution claim in *United States v. Armstrong,* 517 U.S. 456, 116 S.

Ct. 1480, 134 L. Ed. 2d 687 (1996). As the Supreme Court explained in *Armstrong,* the Attorney General and United States Attorneys, as delegates of the President, retain "broad discretion" to enforce federal criminal laws, and "in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties." *Id.* at 464 (internal quotations and citations omitted). In the ordinary case, "so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion." *Id.* (quoting *Bordenkircher v. Hayes,* 434 U.S. 357, 364, 98 S. Ct. 663, 54 L. Ed. 2d 604 (1978)).

A prosecutor's discretion, however, must yield to constitutional constraints, including the equal protection component of the Fifth Amendment's Due Process Clause. *Id.* (citing *Bolling v. Sharpe,* 347 U.S. 497, 500, 74 S. Ct. 693, 98 L. Ed. 884 (1954)). Thus, a prosecutor must not base a decision whether to prosecute on "an unjustifiable standard such as race, religion, or other arbitrary classification." *Id.* (quoting *Oyler v. Boles,* 368 U.S. 448, 456, 82 S. Ct. 501, 506, 7 L. Ed. 2d 446 (1962)). To overcome the presumption that a prosecutor has not violated equal protection, a criminal defendant must present "clear evidence to the contrary." *Id.* at 465 (citation omitted). Specifically, "[t]he claimant must demonstrate that the federal prosecutorial policy 'had a discriminatory effect and that it was motivated by a discriminatory purpose.'" *Id.* To establish discriminatory effect in a race case, the defendant must show that "similarly situated individuals of a different race were not prosecuted." *Id.*

Furthermore, due to the onerous nature of discovery on selective prosecution claims, the Supreme Court held that the "justifications for a rigorous standard for the elements of a selective-prosecution claim . . . require a correspondingly rigorous standard for discovery in aid

4

of such a claim." *Id.* at 468. Therefore, to obtain discovery on a selective prosecution claim, a criminal defendant must show "some evidence of both discriminatory effect and discriminatory intent." *United States v. Bass,* 536 U.S. 862, 862, 122 S. Ct. 2389, 153 L. Ed. 2d 769 (2002) (citing *Armstrong,* 517 U.S. at 465). Under *Armstrong,* the defendant's showing must include "evidence that similarly situated defendants of other races could have been prosecuted, but were not . . . ." *Armstrong,* 517 U.S. at 469. The Supreme Court decided that this threshold "adequately balances the Government's interest in vigorous prosecution and the defendant's interest in avoiding selective prosecution." *Id.* at 470.

Although *Armstrong* dealt only with a selective prosecution claim, a defendant seeking discovery on a selective enforcement claim also must make the showing *Armstrong* requires. *United States v. Barlow,* 310 F.3d 1007, 1010 (7th Cir. 2002) ("[T]he same analysis governs both [selective prosecution and selective enforcement] claims: a defendant seeking discovery on a selective enforcement claim must meet the same 'ordinary equal protection standards' that *Armstrong* outlines for selective prosecution claims." (citations omitted)). Thus, to establish discriminatory effect with respect to a selective enforcement claim, "an African American claimant must demonstrate that a law or regulation was enforced against him, but not against similarly situated individuals of other races." *Id.* (citing *Armstrong,* 517 U.S. at 465).

## II. Federal Rule of Criminal Procedure 16

Federal Rule of Criminal Procedure 16(a)(1)(E) states:

Upon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and: (i) the item is material to preparing the defense; (ii) the government intends to use the item in its case-in-chief at trial; or (iii) the item was obtained from or belongs to the defendant.

5

Fed. R. Crim. P. 16(a)(1)(E). A defendant must make "at least a *prima facie* showing of materiality" to obtain discovery under Rule 16(a)(1)(e)(E)(i). *See United States v. Caputo,* 373 F.Supp.2d 789, 793–94 (N.D. Ill. 2005).

In *Armstrong,* the Supreme Court considered whether a criminal defendant may obtain discovery on a claim of selective prosecution under Rule 16(a)(1)(E), which, at the time, fell under Rule 16(a)(1)(C). *See Armstrong,* 517 U.S. at 462-63. The Supreme Court held that he or she cannot: "Rule 16(a)(1)(C) authorizes defendants to examine Government documents material to the preparation of their defense against the Government's case in chief, but not to the preparation of selective-prosecution claims." *Id.* The Court, therefore, denies Alexander's request for discovery on racial profiling insofar as Alexander bases his request on Rule 16.

## ANALYSIS

I. **Alexander Fails to Meet the *Armstrong* Standard for Discovery on His Selective Prosecution or Enforcement Claims**

As explained above, to obtain discovery on his purported defenses of selective prosecution and selective enforcement, Alexander must show "some evidence of both discriminatory effect and discriminatory intent." *Bass,* 536 U.S. at 862 (citing *Armstrong,* 517 U.S. at 465); *Barlow,* 310 F.3d at 1010 (applying *Armstrong* to selective enforcement claims). The only evidence Alexander presents of discriminatory effect or discriminatory intent is the racial makeup of defendants from 17 stash-house robbery sting cases brought in the Northern District of Illinois since 2006. This evidence fails to fulfill either prong of the *Armstrong* test.

A. **Discriminatory Effect**

With respect to the discriminatory effect prong, Alexander's evidence fails to show that "similarly situated defendants of other races could have been prosecuted [or arrested], but were not . . . ." *Armstrong,* 517 U.S. at 469. In *Armstrong,* the criminal defendant attempted to show

discriminatory effect through an affidavit of a paralegal in the Office of the Federal Public Defender alleging that all defendants in similar cases that the public defender's office closed in 1991 were African American. *See id.* at 459. The paralegal attached to the affidavit a "study" listing the 24 defendants, their race, the charges brought against them, and the status of each case. *Id.* The Supreme Court held that this "study" did not constitute evidence of discriminatory effect because it "failed to identify individuals who were not black and could have been prosecuted for the offenses for which respondents were charged, but were not so prosecuted." *Id.* at 470.

In *Chavez v. Illinois State Police,* 251 F.3d 612 (7th Cir. 2001), the Seventh Circuit clarified that *Armstrong* did not entirely foreclose the use of statistics to show discriminatory effect. *Id.* at 638 ("While few opinions directly acknowledge that statistics may be used to prove discriminatory effect, the Court repeatedly relied on statistics to do just that."). The Seventh Circuit reaffirmed, however, that "[t]he statistics proffered must address the crucial question of whether one class is being treated differently from another class that is otherwise similarly situated." *Id.* "[R]aw statistics regarding overall charges say nothing about charges brought against *similarly situated defendants.*" *Bass,* 536 U.S. at 862; *see also Barlow,* 310 F.3d at 1009-10 ("Dr. Lamberth's data tells us nothing about the behavior of the white travelers in Union Station; we therefore have no basis for concluding that any of these white travelers [that law enforcement did not stop] were similarly situated to Barlow."); *United States v. Hayes,* 236 F.3d 891, 895-96 (7th Cir. 2001) ("Hayes has failed to identify a single defendant of another race who met the guidelines of Operation Triggerlock but was not federally prosecuted . . . .").

Alexander's analysis of the 17 cases he studied shows that approximately 75% of the defendants prosecuted in those cases are African American. The data he offers, however, says

7

nothing about whether the ATF or the United States Attorney chose not to conduct or prosecute stash-house robbery sting cases for similarly situated individuals of another race. The Supreme Court and the Seventh Circuit have repeatedly found that this type of evidence fails to fulfill the discriminatory effect prong of the *Armstrong* test. *See Armstrong,* 517 U.S. at 465; *Bass,* 536 U.S. at 862; *Barlow,* 310 F.3d at 1009-10; *Hayes,* 236 F.3d at 895-96.

Moreover, the Court rejects Alexander's argument that because ATF agents control who they approach about a phony stash-house robbery, "the pool of similarly situated whites [in this case] is the entire adult white population of the Northern District of Illinois." (*See* R. 119, Def. Mem. at 5.) There is no support in the case law for such a broad interpretation of who constitutes a "similarly situated" individual. Indeed, the Seventh Circuit's analyses in *Barlow* and *Hayes—*and common sense—counsel against such a broad interpretation. In *Barlow,* two undercover DEA agents questioned and searched two African American individuals in Union Station. *See* 310 F.3d at 1009-10. The Seventh Circuit identified the group of similarly situated individuals as "whites engaging in the same behavior as Barlow—*i.e.,* looking nervously over their shoulders"—not as all white individuals in Union Station. *See id.* at 1012. Similarly in *Hayes,* which dealt with alleged racial profiling in federal enforcement of firearms offenses, the Seventh Circuit identified "similarly situated" individuals as "persons of another race *who fell within the Operation Triggerlock guidelines* [who] were not federally prosecuted." *See* 236 F.3d at 895-96 (emphasis added). Thus, here, Alexander must show that the ATF chose not to conduct stash-house robbery sting operations to ensnare members of another race who fell within the ATF's guidelines regarding who those operations may target. Alexander has failed to do so.

The Court, though, is sympathetic to Alexander's argument that "[i]t is difficult to identify similarly situated whites who have not been targeted absent information about what

8

selection criteria the informants and [the] ATF have been using." (Def. Mem. at 5.) Therefore, the Court will allow limited discovery of the ATF's policies and procedures regarding the selection criteria for targets of phony stash-house robbery cases in place at the time of Alexander's arrest. The government has submitted *ex parte* a six-page excerpt of an ATF manual that includes some provisions related to the identification of targets for this type of sting operation. The Court reviewed the document *in camera* and has identified certain sections that the government should disclose to defense counsel, subject to the protective order entered in this case. The government shall provide a redacted copy of the document to defense counsel, consistent with the Court's directive, by December 12, 2013. The government shall redact <u>all but the following sections</u> of that document:

   i.   Section 12(a)(1) on pages A-30 to A-31;

   ii.  Section 12(b) and subsections (1)-(5) on pages A-31 to A-32; and

   iii. Section 12(f)(1) on page A-34, except for the front half of the hyphenated word in the first and sixth lines of the subsection.

The Court denies the remainder of Alexander's discovery requests because he has failed to make a credible showing of discriminatory effect. *See, e.g., Armstrong,* 517 U.S. at 465.

   **B.   Discriminatory Intent**

Alexander's motion for discovery on racial profiling also fails under the discriminatory intent prong of the *Armstrong* test. To establish discriminatory intent, Alexander must show that "the decisionmakers in [his] case acted with discriminatory purpose." *Chavez,* 251 F.3d at 645. "'Discriminatory purpose' implies more than . . . intent as awareness of consequences. It implies that the decisionmaker . . . selected or reaffirmed a particular course of action at least in part 'because of' its adverse effects upon an identifiable group.'" *Id.* (citations omitted). In *Chavez,* the Seventh Circuit found that the statistics offered to show that officers intentionally

9

discriminated against Hispanics in stopping and detaining motorists may not serve as the "sole proof" of discrimination. *Id.* at 647-48. Rather, a claimant must present "sufficient non-statistical evidence to demonstrate discriminatory intent." *Id.*

Alexander fails to meet this requirement. The only evidence Alexander offers to show discrimination is the analysis of the racial makeup of defendants in the 17 stash-house robbery cases he studied. (*See* Mot. at 4-6.) Under *Chavez,* even if this analysis sufficed as evidence of discriminatory effect—which, as explained above, it does not—it fails to show discriminatory intent.

Alexander argues that, in addition to the statistics he provided, he can prove discriminatory intent (1) by showing that the ATF or the U.S. Attorney's Office acted like "an ostrich burying its head in the sand to avoid seeing the obvious," (2) under a *Monell* theory, by showing "a widespread ATF practice condoned by the U.S. Att[orney's] Office to target persons of color, principally African Americans, as the prospective defendants in phony stash-house ripoff cases," or (3) by showing that "race was considered in making the decision to prosecute or recommend prosecution by ATF." (Def. Mem. at 5-7.) The Court disagrees. Alexander does not cite a single case in which a court allowed discovery on selective prosecution or selective enforcement claims based on a showing of alleged discriminatory intent under any of these theories.

Even if Alexander could rely on these theories to fulfill the discriminatory intent prong of the *Armstrong* test—a dubious premise considering the demanding standard the Supreme Court imposed in *Armstrong* as well as the policy considerations underlying that standard—Alexander fails to make a "credible showing" of discriminatory intent under any of his theories. The only evidence Alexander offers of ATF special agents or the U.S. Attorney intentionally shielding

itself from knowledge of discrimination is that the ATF keeps no statistics about the race of defendants targeted in its stash-house robbery stings. (*See* Mot. at 5-6.) The ATF's failure to keep statistics on the race of defendants hardly suggests discriminatory intent. Alexander, moreover, offers no evidence to support his assertion that the ATF has a widespread practice of targeting minorities in its stash-house robbery stings or that the ATF or the U.S. Attorney considered Alexander's race in deciding to pursue this case. (*See id.* at 7.) Alexander, therefore, fails to provide evidence of discriminatory intent.

Accordingly, the Court denies Alexander's request for discovery on racial profiling, with the limited exception noted in Part I.A, *supra*.[2]

## II. The Court Rejects Alexander's Request for Discovery under *Brady v. Maryland*

Alexander argues that the Court should order the discovery he requests under *Brady v. Maryland,* 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), "if race was considered in making the decision to prosecute or recommend prosecution by the ATF." (Def. Mem. at 7.) Under *Brady* and its progeny, the government has an affirmative duty "to disclose evidence materially favorable to the accused." *Bielanski v. County of Kane,* 550 F.3d 632, 643 (7th Cir. 2008) (quoting *Youngblood v. West Virginia,* 547 U.S. 867 869, 126 S. Ct. 2188, 165 L. Ed. 2d 269 (2006)). This duty extends to exculpatory evidence as well as impeachment evidence. *Mosley v. City of Chicago,* 614 F.3d 391, 397 (7th Cir. 2010) (citing *Youngblood,* 547 U.S. at 869, 126 S. Ct. 2188, 165 L. Ed. 2d 269). *Brady*, however, does not "entitle a criminal defendant to embark upon an unwarranted fishing expedition through government files, nor does it mandate that a trial judge conduct an *in camera* inspection of the government's files in every case." *United States v. Phillips,* 854 F.2d 273, 278 (7th Cir. 1988); *United States v. Mitchell,* 178 F.3d

---

[2] Additionally, some of the categories of information or documents Alexander requests have no relevance to his claim of racial profiling. The Court denies Alexander's request for documents in categories (c) and (f) for this additional reason.

11

904, 908-09 (7th Cir. 1999). "Such matters are committed to the sound discretion of the trial judge." *Phillips,* 854 F.2d at 278.

Alexander has offered no evidence that the ATF or the government considered his race in deciding to investigate and prosecute this action. The Court, therefore, declines to order the discovery Alexander requests under *Brady,* especially where doing so would allow Alexander to "engage[] in the type of fishing expedition rejected by the Supreme Court" in *Armstrong. See Hayes,* 236 F.3d at 896; *see also, e.g., United States v. Wolff,* No. 11-719 (FSH), 2013 WL 646204, at *6-7 (D.N.J. Feb. 20, 2013) (denying discovery under *Brady* where the defendant's allegations regarding the materials sought "[did] not rise above the level of mere speculation about materials in the government's files" (quotations and citation omitted)); *United States v. Caputo,* 373 F. Supp. 2d 789, 794-95 (N.D. Ill. 2005) (denying discovery under *Brady* because "it is unknown whether any of the requested documents contain exculpatory or impeachment evidence that is material to either the issue of guilt or punishment").

## CONCLUSION

For the reasons explained above, the Court denies Alexander's motion for discovery on alleged racial profiling in large part. The Court, however, will allow limited discovery of portions of the ATF manual in place at the time of Alexander's arrest regarding the selection criteria for targets of phony stash-house robbery cases, which the government submitted to the Court *ex parte* for an *in camera* review. The government shall provide a copy of the document

submitted to the Court (redacted per the Court's instructions in Part I.A., *supra*) to defense counsel, subject to the protective order in this case, by December 12, 2013.

DATED:  December 10, 2013                                      **ENTERED**

_____
AMY J. ST. EVE
U.S. District Court Judge