**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | No. 11 CR 148-1 |
| v. | ) | |
| | ) | Hon. Amy J. St. Eve |
| | ) | |
| WILLIAM ALEXANDER | ) | |

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

      Special Agents with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") arrested Defendant William Alexander ("Defendant") and his two co-defendants as part of a sting operation involving a stash-house robbery. The stash house at issue was not real and the individuals with whom the defendants agreed to commit the robbery were undercover ATF agents. The grand jury returned a four-count indictment, charging Defendant with conspiring and attempting to knowingly and intentionally possess five kilograms or more of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1) and § 846, and knowingly possessing a firearm in furtherance of a drug trafficking crime in violation of 21 U.S.C. § 846 and 18 U.S.C. § 924(c)(1)(A), (2). (R. 16, Indictment at 1-3.)

      On December 9, 2013, the government filed several motions *in limine* regarding evidence it seeks to admit or preclude the parties from admitting at trial. (R. 167, Mot.) Defendant failed to respond to the government's motions. As explained below, the Court grants the government's motions *in limine* in part, denies them in part, and reserves ruling on them until trial in part.

## LEGAL STANDARD

Trial courts have broad discretion in ruling on evidentiary issues before trial. *See Jenkins v. Chrysler Motors Corp.,* 316 F.3d 663, 664 (7th Cir. 2002); *United States v. Lillie,* No. 08 CR 717, 2009 WL 3518157, at *1 (N.D. Ill. Oct. 28, 2009). Accordingly, "[a]lthough the Federal Rules of Evidence do not explicitly authorize *in limine* rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States,* 469 U.S. 38, 41 n.4, 105 S. Ct. 460, 83 L. Ed. 2d 443 (1984). An *in limine* ruling avoids delays and allows the parties an opportunity to prepare themselves and witnesses for the introduction or exclusion of the evidence at issue. *See Wilson v. Williams,* 182 F.3d 562, 566 (7th Cir. 1999); *Jonasson v. Lutheran Child & Family Servs.,* 115 F.3d 436, 440 (7th Cir. 1997) ("The prudent use of the *in limine* motion sharpens the focus of later trial proceedings and permits the parties to focus their preparation on those matters that will be considered by the jury."); *United States v. Connelly,* 874 F.2d 412, 416 (7th Cir. 1989). Ultimately, an *in limine* motion "performs a gatekeeping function and permits the trial judge to eliminate from further consideration evidentiary submissions that clearly ought not be presented to the jury because they clearly would be inadmissible for any purpose." *Jonasson,* 115 F.3d at 440.

A party seeking to exclude evidence has the burden of demonstrating that the evidence is inadmissible for any purpose. *United States v Brown,* No. 08-cr-1009, 2011 WL 43048, at *2 (N.D. Ill. Jan. 6, 2011). Regardless of a court's initial ruling on an *in limine* motion, the court may adjust its ruling during the course of the trial. *See Farfaras v. Citizens Bank & Tr. of Chicago,* 433 F.3d 558, 565 (7th Cir. 2006) (citing *Luce,* 469 U.S. at 41-42). Furthermore, the court may defer ruling on a motion *in limine* until trial if the parties' arguments "cannot be

evaluated accurately or sufficiently . . . in such a procedural environment." *Jonasson,* 115 F.3d at 440.

## ANALYSIS

I.  **Motion to Require Defendant to Make a Sufficient Evidentiary Proffer Before Arguing or Admitting Evidence of Entrapment**

The government moves the Court to order Defendant to submit a "sufficient pre-trial evidentiary proffer of facts to support an entrapment defense before . . . argu[ing] or present[ing] evidence in support of such a defense." (Mot. at 1.) On January 6, 2014, Defendant filed a proffer in support of his anticipated entrapment defense. (R. 180, Proffer.) The proffer sets forth facts to which Defendant purportedly will testify and which the government's confidential informant allegedly will confirm if Defendant can locate him before trial. (*Id.* at 2.) In light of Defendant's proffer, the Court denies the government's motion *in limine*, without prejudice, as moot.

II. **Motion to Admit Defendant's Statements Regarding Past Robberies**

The government seeks to admit Defendant's statements regarding his participation in past stash-house robberies. (Mot. at 6-15.) According to the government, when an undercover special agent told Defendant that he worked as a courier for a drug trafficking organization and wanted to raid the organization's stash house, Defendant responded that he had committed this type of robbery multiple times in the past and stated "[i]t's real easy." (*Id.* at 7.) The government argues that these statements are admissible if Defendant raises an entrapment defense as evidence of Defendant's predisposition to commit the charged crimes. (*Id.* at 6-7.) The government further argues that even if Defendant does not raise an entrapment defense, the statements are admissible as direct evidence of the conspiracy (*see id.* at 8-11) or as evidence of

3

Defendant's knowledge, intent, plan, preparation, and absence of mistake or accident under Federal Rule of Evidence ("Rule") 404(b). (*Id.* at 11-16.)

### A. Predisposition to Commit Charged Crimes

There is no question that Defendant's statements regarding past stash-house robberies are relevant to his entrapment defense. "An entrapment defense contains two related elements: (1) government inducement of the crime; and (2) the defendant's lack of predisposition to engage in the crime." *United States v. Plowman,* 700 F.3d 1052, 1057 (7th Cir. 2012); *United States v. Blassingame,* 197 F.3d 271, 279 (7th Cir. 1999). The following factors are relevant to analyzing a defendant's predisposition to commit a crime: "(1) the defendant's character or reputation; (2) whether the government initially suggested the criminal activity; (3) whether the defendant engaged in the criminal activity for profit; (4) whether the defendant evidenced a reluctance to commit the offense that was overcome by government persuasion; and (5) the nature of the inducement or persuasion by the government." *United States v. Hall,* 608 F.3d 340, 343 (7th Cir. 2010) (quoting *Blassingame,* 197 F.3d at 281).

When a defendant raises an entrapment defense, "evidence of prior bad acts is admissible to prove predisposition 'because in such a case the defendant's predisposition to commit the charged crime is legitimately at issue.'" *United States v. Lewis,* 641 F.3d 773, 783 (7th Cir. 2011) (quoting *United States v. Swiatek,* 819 F.2d 721, 728 (7th Cir. 1987). "To be admissible, however, this evidence must show an act that is similar enough and close enough in time to be relevant to the matter at issue, and its probative value must not be substantially outweighed by the danger of unfair prejudice." *Id.* Relevant factors for assessing the probative value of predisposition evidence include whether the evidence "is hearsay; is remote in time from the crimes charged; is uncorroborated and otherwise suspect; is introduced without warning to the

accused, who may not, as a consequence be able to defend against it; or is indicative of character traits that are only minimally relevant to the accused's predisposition. *United States v. Murzyn*, 631 F.2d 525, 529 (7th Cir. 1980). A court may refuse to admit evidence of predisposition where the "inflammatory nature" of the evidence "presents too great a danger of prejudicing the jury against the accused." *Id.*

Defendant's purported admissions that he committed similar stash-house robberies in the past bears directly on his predisposition to commit the charged crimes. Defendant admitted to the undercover special agent that he had previously participated in stash-house robberies similar to the one the special agent proposed. (*See* Mot. at 7.) This admission is highly probative of determining whether the defendant was an "unwary innocent" or an "unwary criminal" who availed himself of the opportunity to perpetrate the charged crimes. *See United States v. Al-Shahin,* 474 F.3d 941, 948 (7th Cir. 2007). It is not hearsay, as it is Defendant's own statement; it pertains to the same type of crime that is at issue in this case; and Defendant has notice of his admission and a chance to defend against it. Defendant also will have an opportunity to cross-examine the special agent who testifies about the admission. Defense counsel has suggested that Defendant was a "blowhard," and simply lied to the undercover special agent about committing previous stash-house robberies. While Defendant is free to make this argument at trial, it does not undermine the probative value of his admission.

Finally, nothing in the government's motion suggests that Defendant's statements are so inflammatory that they preclude admission of the statements into evidence. The Court, however, would like to review the recordings of Defendant's statements that the government seeks to admit to confirm that their probative value outweighs the risk of unfair prejudice to Defendant.

The government must submit transcripts of the recordings at issue to the Court for its review (and produce them to Defendant if it has not yet done so) by January 10, 2014.

**B.      Direct Evidence of Conspiracy or Evidence Admissible under Rule 404(b)**

The government contends that even if Defendant has not properly raised an entrapment defense, the Court should admit Defendant's admissions of past stash-house robberies and statement that "[it]'s real easy" as direct evidence of the charged conspiracy (*see* Mot. at 8-11) or as evidence of Defendant's knowledge, intent, plan, preparation, and absence of mistake or accident under Rule 404(b). (*See id.* at 11-16.)  Under either theory, the government must establish that Defendant's admissions are admissible for purposes other than showing Defendant's "bad character and propensity to commit the charged crime." *See United States v. Miller,* 673 F.3d 688, 697 (7th Cir. 2012).  Additionally, the government must establish that the statements are admissible under Rule 402 and Rule 403, which "still apply with full force." *Id.* Under Rule 403, "all bad acts evidence must be balanced for probative value and unfair prejudice." *Id.*; *United States v. Sophie,* 900 F.2d 1064, 1074 (7th Cir. 1990) (applying Rule 403 balancing test to admission evidence of existence of conspiracy).

To assess the admissibility of Defendant's admissions, the Court must review the admissions in full and in the context in which Defendant made them.  For this additional reason, the government must submit transcripts of the recordings at issue to the Court (and produce them to Defendant, if it has not yet done so) by January 10, 2014.  The Court reserves ruling on this aspect of the government's motion *in limine* until it has the opportunity to review those transcripts.

**III. Motion to Admit Recordings Through the Testimony of Law Enforcement Officers**

The government seeks to admit into evidence portions of recorded in-person meetings and telephone conversations between Defendant and either the government's confidential informant or the undercover ATF special agent. (Mot. at 16.) The government represents that although the undercover special agent recorded the "vast majority" of these conversations, the confidential informant, who the government does not intend to call as a witness at trial, recorded at least one telephone conversation that the government may seek to introduce. (*Id.*) That telephone conversation occurred between the confidential informant and Defendant on January 30, 2011. (*Id.*) The government seeks to admit a recording of the January 30 conversation through the testimony of law enforcement agents who outfitted the confidential informant with the recording device and who can testify regarding the circumstances surrounding the recording. (*Id.*)

The government's motion requires the Court to resolve two issues: (1) whether the law enforcement agents can authenticate the January 30 recording; and (2) whether introduction of the January 30 recording without the testimony of the confidential informant would violate the Confrontation Clause of the Sixth Amendment.

**A. Authentication**

Rule 901 requires a party seeking to admit an item into evidence at trial to "produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). For tape recordings, a party must "offer[] clear and convincing evidence that the proffered tape is a true, accurate, and authentic recording of the conversation between the parties." *United States v. Emerson,* 501 F.3d 804, 813 (7th Cir. 2007). A party may satisfy this requirement in two ways: "(1) a chain of custody demonstrating the tapes are in the same

condition as when they were recorded, or (2) testimony demonstrating the accuracy and trustworthiness of the tapes." *United States v. Collins,* 715 F.3d 1032, 1035 (7th Cir. 2013) (citing *United States v. Thomas,* 294 F.3d 899, 904 (7th Cir. 2002)). The witnesses through whom the party seeks to authenticate the recordings need not have participated in or listened to the recorded conversation in real time. *See, e.g., id.* at 1035-37 (holding that the district court properly admitted tape recordings of conversations between the defendant and the government's informant even though the informant "did not testify at trial and . . . no government agents were present when [he] made the recordings"); *Emerson,* 501 F.3d at 814-15 (holding that the district court did not abuse its discretion in admitting tape recordings where the deputy who made the recordings did not listen to the conversations as they were recorded); *see also United States v. Fuentes,* 563 F.2d 527, 532 (2d Cir. 1977) ("There is no requirement that the tapes be put in evidence through the person wearing the recorder, or for that matter, through a contemporaneous witness to the recorded conversation.").[1]

In this case, the government seeks to admit the tape recordings by establishing the chain of custody. (*See* Mot. at 18.) According to the government, law enforcement agents will testify at trial that "they were present with the [confidential informant] when the phone call was made, that they controlled the recording devices before and after the call, . . . that they logged the recordings into evidence after the call was concluded," and that an agent "listened to the copies of the recordings on the marked items of evidence and [confirmed] that those copies are true and accurate copies of the full length original recordings." (*Id.*) Additionally, the government represents that it will offer "sufficient voice identification testimony from one or more law enforcement witnesses." (*Id.*)

---

[1] As the Seventh Circuit noted in *Collins,* "[i]t would be an impossible standard to always require agents to be present when a tape recording is made." *Collins,* 715 F.3d at 1036.

8

The proffered testimony—assuming that the government in fact elicits it at trial—sufficiently establishes the chain of custody of the January 30 recording and, thus, satisfies the government's burden to authenticate the January 30 recording under Rule 901(a). *See Collins,* 715 F.3d at 1036; *Emerson,* 501 F.3d at 814-15.[2] If the government fails to sufficiently lay this foundation at trial, the Court will entertain Defendant's objection.

B.   **Confrontation Clause**

"A criminal defendant's right to confront witnesses is a fundamental right essential to a fair trial as guaranteed by the Sixth Amendment's Confrontation Clause." *United States v. Linzy,* 604 F.3d 319, 323 (7th Cir. 2010). The Confrontation Clause requires courts to allow the defendant an opportunity for effective cross-examination. *See id.* As a result, the Confrontation Clause prohibits the admission of testimonial hearsay unless the declarant is unavailable and the defendant had a prior opportunity for cross-examination. *See, e.g., Crawford v. Washington,* 541 U.S. 36, 68, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004); *United States v. Tolliver,* 454 F.3d 660, 664-65 (7th Cir. 2006).

If the testimonial statements at issue are not hearsay, however, "the concerns in *Crawford* do not come into play . . . as the Confrontation Clause 'does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted.'" *United States v. Foster,* 701 F.3d 1142, 1150 (7th Cir. 2012) (quoting *Crawford,* 541 U.S. at 59 n.9); *see also United States v. Dodds,* 569 F.3d 336, 341 (7th Cir. 2009). Accordingly, "[t]he admission of

---

[2] In *United States v. Eberhardt,* 467 F.3d 659 (7th Cir. 2006), the Seventh Circuit questioned the admissibility of tape recordings where "[t]he only evidence concerning the tape's authenticity was [a law enforcement agent's] testimony that he equipped [the informant] with a recording device before the [informant's] conversation with [the defendant], that he removed the recording device after the conversation, and that the voices on the tape were [the informant's] and [the defendant's]." *Id.* at 668. None of the agents in that case, however, testified about the tape's chain of custody. *Id. Eberhardt,* therefore, does not preclude the government from authenticating the tape recordings at issue here by establishing the chain of custody.

9

recorded conversations between informants and defendants is permissible where an informant's statements provide context for the defendant's own admissions," but are not offered for their truth. *Foster,* 701 F.3d at 1150; *United States v. Wright,* 722 F.3d 1064, 1067 (7th Cir. 2013) (admission of a non-testifying confidential informant's statements "is permissible if the statements simply provide context for the defendant's own admissions . . . in that they help the jury make sense of [the defendant's] reaction to what [the confidential informant] said and did" (internal quotations and citations omitted)). *But see United States v. Adams,* 628 F.3d 407, 417 (7th Cir. 2010) (holding that the district court erred in admitting confidential informant's statements where they "directly inculpate[d] [the defendant] on the charge of possessing crack with the intent to distribute it, and were not necessary to provide any foundation for the officer's subsequent action" or context).

The government represents that it seeks to admit the statements of the confidential informant from the January 30 recording "not for their truth, but rather to provide context so as to make the defendant's statements intelligible as admissions." (Mot. at 19.) In order to allow the Court to assess the government's argument, the government must submit a transcript of the January 30 recording to the Court for its review (and produce a copy to Defendant, if it has not yet done so) by January 10, 2014. The Court reserves ruling on this aspect of the government's motion *in limine* until it has had an opportunity to review those transcripts. If the recording is admissible, the Court will instruct the jury that the confidential informant's statements are not being offered for the truth of the matters asserted, but rather to provide context.

**IV.** **Motion to Permit Opinion Testimony from the Undercover Special Agent**

The government plans to elicit testimony from the undercover special agent "regarding his understanding of various statements he made or heard in the recorded conversations between

10

himself and the defendant." (Mot. at 20.) Rule 701 allows a lay witness to testify in the form of an opinion if the opinion is "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. The first requirement—that the witness's opinion is "rationally based" on his or her perception—"requires that the witness's opinion be grounded in his personal knowledge." *United States v. Saulter,* 60 F.3d 270, 276 (7th Cir. 1995). As the Seventh Circuit has explained, "[t]hough one can't actually read another person's mind, one is often able to infer, from what the person says or from the expression on his face or other body language, what he is thinking." *United States v. Curescu,* 674 F.3d 735, 740 (7th Cir. 2012). Accordingly, lay witnesses may testify about their understanding of conversations in which they participated, even if their testimony implies an opinion about what the speaker thought. *See id.*; *United States v. Estrada,* 39 F.3d 772, 773 (7th Cir. 1994) (finding that a lay witness's testimony met the first requirement of Rule 701 where the witness "was a participant in the conversations with Estrada and testified as to his understanding of their communications").

With respect to Rule 701's second requirement, a lay witness's opinion about the meaning of certain words or phrases may help a jury understand the conversations about which the witness has testified. *See Curescu,* 674 F.3d at 740; *Estrada,* 39 F.3d at 773. "Anyone who's overheard conversations on the street or in a restaurant knows that conversations between strangers are often unintelligible. There is the public language we employ when talking to strangers and the elliptical private language that we use when talking to people whom we know." *Cursescu,* 674 F.3d at 740. Thus, jurors may need an "interpreter" to make sense of private conversations, and "a party to the conversation is the obvious choice to be that interpreter." *See*

11

*id.* This is especially true if the conversation involves drug-related terms unfamiliar to most jurors, code words, or other veiled allusions to illegal transactions. *See, e.g., Estrada,* 39 F.3d at 773 (allowing lay opinion testimony to interpret conversations that "included code words for the negotiation of cocaine"); *Curescu,* 674 F.3d at 740 ("Just as dealers in illegal drugs do not name the drugs in their phone conversations but instead use code words, so parties to other illegal transactions often avoid incriminating terms, knowing that they may be overheard electronically."); *Saulter,* 60 F.3d at 276 n.1 ("We have previously held that juries may need assistance understanding drug-related terms." (citations omitted)).

The government argues that "[t]estimony from the [undercover special agent] regarding his understanding of various statements on the recordings will be rationally based on his own perceptions and helpful to the jury's understanding of the content of the conversations." (Mot. at 21.) The Court grants the government's motion. The special agent may testify regarding his understanding of his conversations with Defendant. The agent, however, may not give expert testimony regarding the meaning of code words he learned through his involvement in other investigations. *See United States v. Moreland,* 703 F.3d 976, 983 (7th Cir. 2012) (distinguishing between the law enforcement agent's testimony as a lay witness regarding code words that he had learned through the investigation at issue and his testimony as an expert witness regarding code words that he had learned through his involvement in other drug investigations).

V.    **Motion to Allow the Government to Impeach Defendant with Prior Convictions**

The government argues that if Defendant testifies at trial, the Court should allow the government to impeach Defendant with his prior convictions. (Mot. at 22-25.) Specifically, the government seeks to impeach Defendant with the following convictions:

| Date of Conviction | Offense | Sentence |
|---|---|---|
| November 5, 2011 | Aggravated Assault | 8 days in jail |
| April 11, 2006 | Distribution of a Controlled Substance | 6 years imprisonment |
| August 2, 2005 | Possession of a Controlled Substance (2 Counts) | 18 months imprisonment on each count (to run consecutively) |
| November 14, 2002 | Possession of a Controlled Substance | 3 years imprisonment |
| November 12, 2002 | Possession of a Controlled Substance | 1 year imprisonment (to run consecutively with November 14, 2002 conviction) |
| November 4, 2002 | Possession of a Controlled Substance | 1 year imprisonment |

Rule 609 "governs the admissibility of a witness's prior convictions for impeachment purposes." *United States v. Rogers,* 542 F.3d 197, 200 (7th Cir. 2008). Rule 609(a)(1)(B) provides that, in a criminal case, if the witness is the defendant, the Court must admit evidence of a prior conviction for a crime "punishable by death or by imprisonment for more than one year" in the convicting jurisdiction if "the probative value of the evidence outweighs its prejudicial effect to that defendant." Fed. R. Evid. 609(a)(1)(B); *Romanelli v. Suliene,* 615 F.3d 847, 854 (7th Cir. 2010). When determining whether the probative value of a prior conviction outweighs any potential prejudice, courts consider the following factors: "(1) the impeachment value of the prior crime; (2) the point in time of the conviction and the defendant's subsequent history; (3) the similarity between the past crime and the charged crime; (4) the importance of the defendant's testimony; and (5) the centrality of the credibility issue." *United States v. Gant,* 396 F.3d 906, 909 (7th Cir. 2005) (quoting *Rodriguez v. United States,* 286 F.3d 972, 983 (7th Cir. 2002)).

Rule 609(b) further provides, in relevant part, that if more than ten years have elapsed from the later of "the witness's conviction or release from confinement," the Court may only admit the conviction if "its probative value, supported by specific facts and circumstances,

substantially outweighs its prejudicial effect." Fed. R. Evid. 609(b)(1). Pursuant to this standard, "impeachment by a conviction falling outside the rule's ten-year time limit should be permitted only in rare and exceptional circumstances." *Rogers,* 542 F.3d at 201. The ten-year period begins to run on the date of the witness's conviction or his release from confinement, whichever is later.[3] Fed. R. Evid. 609(b). The Court enjoys broad discretion in determining whether to admit evidence of a defendant's prior convictions. *Clarett v. Roberts,* 657 F.3d 664, 669 (7th Cir. 2011); *United States v. Beck,* 625 F.3d 410, 416 (7th Cir. 2010).

The Court first considers Defendant's April 11, 2006 conviction for distribution of a controlled substance and his August 2, 2005, November 14, 2002, and November 12, 2002 convictions for possession of a controlled substance. Although these crimes are similar to the charged crimes—conspiracy and attempt to knowingly and intentionally possess five kilograms or more of cocaine with intent to distribute, and possession of a firearm in furtherance of a drug trafficking crime,[4] Defendant's credibility certainly will be an important aspect of the trial if he testifies, especially if his testimony conflicts with other witnesses. *See United States v. Montgomery,* 390 F.3d 1013, 1016 (7th Cir. 2004); *United States v. Smith,* 131 F.3d 685, 687 (7th Cir. 1997). Furthermore, a central issue of Defendant's testimony will be the content of his unrecorded discussions with the government's confidential informant, who might not testify at trial. In light of the relevant factors—especially the centrality of Defendant's credibility—the

---

[3] Although the government has not provided the dates of Defendant's release from confinement for the convictions at issue, all but the November 4, 2002 conviction appear to fall within Rule 609's ten-year period. *See* Fed. R. Evid. 609(b).

[4] The risk of unfair prejudice based on the similarity of Defendant's prior convictions to the charged crimes may diminish if Defendant properly raises an entrapment defense because his predisposition to commit the charged crimes and, thus, his criminal history will then be directly at issue. *See United States v. Lewis,* 641 F.3d 773, 783 (7th Cir. 2011) (when a defendant raises an entrapment defense, "evidence of prior bad acts is admissible to prove predisposition because in such a case the defendant's predisposition to commit the charged crime is legitimately at issue" (internal quotations and citation omitted)).

probative value of admitting Defendant's April 11, 2006, August 2, 2005, November 14, 2002, and November 12, 2002 convictions for impeachment purposes outweighs any prejudicial effect to Defendant. *See United States v. Hernandez,* 106 F.3d 737, 740 (7th Cir. 1997) (holding that the district court acted within its discretion in admitting evidence of an earlier conviction, despite its similarity to the charged crime, given the importance of the defendant's credibility in the case (citing *United States v. Causey,* 9 F.3d 1341, 1344-45 (7th Cir. 1993))); *Rodriguez v. United States,* 286 F.3d 972, 983-84 (7th Cir. 2002) (same). The government, therefore, may use these convictions to impeach Defendant pursuant to Rule 609(b).[5]

Next, the Court considers whether to admit Defendant's November 5, 2011 conviction for aggravated assault. The probative value of Defendant's aggravated assault conviction is greater than the probative value of his drug-related due to its recency. *See Causey,* 9 F.3d at 1344 (noting that the recency of the defendant's conviction, which occurred less than six months before trial, enhanced its relevance). Additionally, the danger of unfair prejudice to Defendant stemming from the admission of his aggravated assault conviction is less than the danger of unfair prejudice that his drug-related convictions present because of the dissimilarity between aggravated assault and the charged crimes. *See Montgomery,* 390 F.3d at 1015-16. The government, however, has not identified the maximum sentence that Defendant faced for his aggravated assault conviction. As a result, the Court cannot determine whether evidence of this conviction falls within the scope of Rule 609. *See* Fed. R. Evid. 609(a)(1). Before the Court will allow the government to use the November 5, 2011 conviction for impeachment, the government must establish that the aggravated assault charge Defendant faced "was punishable by death or by imprisonment for one year" in the convicting jurisdiction. *Id.*

---

[5] Should Defendant request it, the Court will provide the jury with an appropriate limiting instruction to further reduce the risk of unfair prejudice. *See United States v. Jackson,* 546 F.3d 801, 820 (7th Cir. 2008).

Finally, the Court denies the government's motion *in limine* with respect to the November 4, 2002 conviction for possession of a controlled substance. The government's ability to impeach Defendant with his more recent convictions reduces the incremental impeachment value of the November 4, 2002 conviction. Moreover, because the conviction may be more than ten years old, Rule 609(b)(1) imposes a more exacting standard for its admission. Under Rule 609(b)(1), the November 4, 2002 conviction is admissible only if its probative value "*substantially* outweighs" its prejudicial effect. *See* Fed. R. Evid. 609(b)(1) (emphasis added). The government has failed to meet this burden given the length of time that has passed since the November 4, 2002 conviction, the similarity of the crime to the charged crimes, and the ability of the government to impeach Defendant through his other prior convictions.

## VI.     Motion to Prohibit References to Discovery in the Presence of the Jury

The government moves the Court to preclude both parties from "requesting discovery from witnesses or opposing counsel, moving the Court for such discovery, or otherwise commenting on discovery matters in the presence of the jury." (Mot. at 26.) The Court agrees with the government that requesting discovery and commenting on discovery matters in the presence of the jury is inappropriate. *See, e.g., United States v. Brown,* No. 08-cr-1009, 2011 WL 43038, at *15 (N.D. Ill. Jan. 6, 2011); *United States v. Azteca Supply Co.,* No. 10 CR 80, 2010 WL 4962828, at *9 (N.D. Ill. Dec. 1, 2010). The Court, therefore, grants the government's motion. The parties should raise any discovery matters with the Court outside the presence of the jury.

## VII.    Motion to Preclude References to the Government's Motivation for Investigating and Prosecuting Defendant

The government requests that the Court "preclude the defendant from attempting to admit evidence concerning, or otherwise referring to, the government's motivation for engaging in the

16

investigation and prosecution of the defendant." (Mot. at 27.) The government argues that inquiries into the subjective intentions or motivations of a government agent are irrelevant to determining Defendant's guilt or innocence, even if Defendant raises an entrapment defense. (*Id.*) Furthermore, while the government concedes that defense counsel may question the government's witnesses about their alleged biases, it requests that the Court require an offer of proof before raising issues regarding the subjective motives and intentions of law enforcement officers. (*Id.* at 28.)

Inquiry into the mental states of investigating officers and prosecutors other than for impeachment purposes is generally irrelevant to determining a defendant's guilt or innocence. *See United States v. Goulding,* 26 F.3d 656, 667 (7th Cir. 1994) (district court did not abuse discretion in refusing to allow the defendant to "mount an inquiry into the mental states of investigating officers since such evidence was irrelevant"); *cf. United States v. Letourneau,* No. 11 CR 182, 2013 WL 3834410, at *2 (N.D. Ill. July 24, 2013) (cautioning defense counsel to "limit his questioning to only those issues relevant to his defense"). It is well-established that "[p]roof of bias or motive to lie is admissible impeachment evidence." *United States v. Salem,* 578 F.3d 682, 686 (7th Cir. 2009) (citations omitted) ("[A]n accused may introduce evidence that an officer has committed misconduct where it can be used to impeach a witness."); *United States v. Boender,* No. 09 CR 186-1, 2010 WL 811296, at *4 (N.D. Ill. Mar. 3, 2010) (citations omitted); *United States v. Infelise,* No. 90 CR 87, 1991 WL 251654, at *1 (N.D. Ill. Nov. 14, 1991).

Following these standards, the Court grants the government's motion to preclude evidence of and references to the government's motivations in investigating and prosecuting Defendant, but denies the government's request to require defense counsel to make an offer of

17

proof every time he attempts to impeach a law enforcement agent on grounds of bias or motive to lie. Such a bright line rule is unnecessary and may impact the flow and effectiveness of defense counsel's cross-examination. The government is free to object to improper areas of inquiry at trial, at which point the Court will have an opportunity to evaluate the relevance and propriety of defense counsel's questions in light of the witness's testimony and other evidence. *See Azteca,* 2010 WL 4962828, at *6; *see also Infelise,* 1991 WL 251654, at *1 (recognizing the defendant's right to show bias as a means of attaching a witness's credibility but cautioning counsel "not to cross over the line into general allegations of selective prosecution or outrageous government conduct").

## VIII. Motion to Preclude Evidence of Defendant's Character for Lawfulness

The government moves the Court to preclude Defendant from "presenting evidence of, or making reference to, the defendant's lawfulness, non-corrupt conduct, and prior good acts, except reputation or opinion evidence offered by character witnesses strictly in accord with the limitations of Rule 405(a)." (Mot. at 28.) The government argues that Defendant "may not seek to establish his innocence . . . through proof of the absence of criminal acts on [other] specific occasions." (*Id.* at 29 (alterations in original) (quoting *United States v. Scarpa,* 897 F.2d 63, 70 (2d Cir. 1990).) According to the government, "[a] contrary holding would eviscerate the carefully drafted limitations of Rule 405, which forbids proof of good character through evidence of specific acts where character is not an element of the charge or defense." (*Id.* (citing *United States v. Beno,* 324 F.2d 582, 589 (2d Cir. 1963).)

Under Rule 405(a), if a person's character or character trait is admissible, the parties may present evidence of that character or trait through reputation or opinion testimony. Fed. R. Evid. 405(a). The parties generally cannot present evidence of specific instances of the person's

18

conduct to prove his or her character, but Rule 405(b) provides an exception to this general rule. Under Rule 405(b), "[w]hen a person's character or character trait is an essential element of a charge, claim, or defense, the character or trait may also be proved by relevant specific instances of the person's conduct." Fed. R. Evid. 405(b).

If Defendant produces sufficient evidence to raise an entrapment defense, the government will have to prove beyond a reasonable doubt "either that [Defendant] was predisposed to commit the offense or the absence of government inducement" to defeat Defendant's entrapment defense. *United States v. Santiago-Godinez,* 12 F.3d 722, 728 (7th Cir. 1993). In analyzing a defendant's predisposition, a court or a jury must analyze "the defendant's character or reputation," among other factors. *See United States v. Hall,* 608 F.3d 340, 343 (7th Cir. 2010) (quoting *United States v. Blassingame,* 197 F.3d 271, 281 (7th Cir. 1999)). "[T]he well-settled rule that character must be considered [if the defendant raises an entrapment defense] is tantamount to a holding that it is an 'essential element' of the defense." *United States v. Thomas,* 134 F.3d 975, 980 (9th Cir. 1998). Therefore, if the Court determines that Defendant has properly raised an entrapment defense, Rule 405(b) allows him to show his lack of predisposition through evidence of specific instances of lawfulness and prior good acts, as long as the evidence he seeks to admit meets the other requirements for admissibility. *Id.*; *see also United States v. Barry,* 814 F.2d 1400, 1404 (9th Cir. 1987) ("[E]ven if appellant may rely on Rule 404(b) or 405(b) to introduce evidence of specific prior good acts in support of his entrapment defense, that evidence must meet the standard of relevance and conform to the hearsay rule.").

Accordingly, the Court reserves ruling on the government's Rule 405 motion until after the Court rules on whether Defendant's proffer of evidence is sufficient to allow him to present an entrapment defense to the jury.

## CONCLUSION

For the reasons explained above, the Court grants the government's motions *in limine* in part, denies them in part, and reserves its ruling for trial in part. The government shall submit to the Court (and produce to Defendant, if it has not yet done so) transcripts of the following tape recordings by January 10, 2014: (a) the January 30, 2011 telephone conversation between Defendant and the confidential informant; and (b) any recordings the government will seek to admit at trial that contain Defendant's statements regarding his participation in previous robberies.

**DATED: January 8, 2014**　　　　　　　　　　　**ENTERED**

　　　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　　AMY J. ST. EVE
　　　　　　　　　　　　　　　　　　　　　　　U.S. District Court Judge